UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
YAHOO! INC.,

                         Petitioner and
                         Cross-Respondent,                        13 CV 7237 (PART I)

       - against -                                                     **OPINION & ORDER**

MICROSOFT CORPORATION,

                         Respondent and
                         Cross-Petitioner.
--------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On October 15, 2013, Petitioner Yahoo! Inc. ("Petitioner" or "Yahoo") moved this Court, sitting in Part One, to vacate an arbitration award of equitable relief. (See Pet'r's Mem. of Law in Supp. of Pet. to Vacate Arbitration Award ("Pet'r's Mem.").) On October 16, 2013, Respondent Microsoft Corporation ("Respondent" or "Microsoft") opposed the motion to vacate and cross-petitioned for a confirmation of the arbitration award. (See Mem. in Opp'n to Yahoo's Pet. to Vacate & in Supp. of Microsoft's Cross-Pet. to Confirm ("Opp'n Mem.").) Yahoo filed a reply on October 17, 2013 in further support of its motion to vacate and objecting to Microsoft's cross-petition, (see Reply Mem. in Further Supp. of Yahoo's Pet. to Vacate & Opp'n to Microsoft's Pet. to Confirm ("Pet'r's Reply")), to which Microsoft replied solely on the issue of the cross-petition to confirm the arbitration award. (See Reply Mem. in Further Supp. of Microsoft's Cross-Pet. ("Resp't's Reply").) On October 18, 2013, Yahoo filed a sur-reply in response to the legal authority cited by Microsoft in its reply. (See Pet'r's Letter re Yahoo Inc. v. Microsoft Corporation, 13 CIV 7237 ("Pet'r's Letter").)

The arbitration award (the "Award") that is the subject of the instant dispute was issued on October 14, 2013 by an Emergency Arbitrator appointed by the American Arbitration

1

Association ("AAA").  (See Decl. of Robert A. Fumerton in Supp. of Yahoo! Inc.'s Pet. to Vacate Arbitration Award ("Fumerton Decl."), Ex. A ("Arbitrator's Award").)  The Emergency Arbitrator issued the Award under the legal authority granted to him by the arbitration provision of an agreement between Microsoft and Yahoo in 2009, the 2009 Search and Advertising Services and Sales Agreement (the "Agreement").  (See Fumerton Decl., Ex. B §17.5.)  In that Award, the Arbitrator denied Microsoft's request for specific performance, but granted its request for injunctive relief.  (See Arbitrator's Award at 8.)

For the reasons discussed below, Yahoo's motion to vacate the arbitration award is DENIED.  Further, given the interest in enforcement of the equitable award made by the Arbitrator, and for the additional reasons discussed below, Microsoft's cross-petition to confirm the arbitration award is GRANTED.

I.  BACKGROUND

A. The Search Alliance and the Agreement to Transition

Microsoft runs the internet search engine Bing, where search ads are provided by Microsoft's Bing Ads system.[1]  (See Opp'n Mem. at 2.)  Yahoo runs its own search engine and system for providing search ads, called Panama.  (See id.)  In the 2009 Agreement, Microsoft and Yahoo agreed to merge their search capabilities internationally to better compete with their main market competitor, Google.  (See Fumerton Decl., Ex. B.)  The Agreement provides that Yahoo would migrate its search and search ad services from Panama to Bing Ads.  (See Pet'r

---

[1] Internet search engines provide results in response to queries entered by internet users.  (See Decl. of Carolyn J. Frantz in Supp. of Microsoft's Opp'n to Yahoo's Pet. To Vacate Arbitration Award ("Frantz Decl."), Ex. 1, 25:16-16:3 (Test. of Robert Wyler, Microsoft's Senior Director of Strategic Alliances).)  Search ads are advertisements that appear on the results page along with unpaid algorithmic search results taken from a broad index of information available on the internet in response to a search request entered by the user.  (See id. at 26:4-27:1 (Test. of Robert Wyler).)

Mem. at 4.) To begin this transition, the global market was divided into sixteen individual geographic markets.

The process of transitioning from Panama to Bing Ads in a given geographic market is broken down into phases, the most important of which are the "Demand" phase and the "Ramp" phase. During the first phase of transition, the Demand phase, the orders of all current Yahoo advertisers are set up in the Bing Ads system, by copying information from Yahoo's Panama system. During this phase, advertisers' orders are generally duplicated and present in both systems. (See Opp'n Mem. at 4.) The Ramp phase follows the Demand phase. During the Ramp phase, search traffic is shifted from Yahoo's system to the Bing Ads system. The shift of search traffic to Bing Ads "ramps up" over time. Thus, at "10% Ramp," 10% of users' searches are answered by the Bing Ads system; at "100% Ramp," the search traffic has been entirely moved over to Bing Ads. (See Frantz Decl., Ex. 3 ¶ 19 (Aff. of Robert Wyler).) In fourteen out of the sixteen of its geographic markets, Yahoo has completed the transition of its advertising business to Bing Ads. (See Arbitrator's Award at 3.) The remaining two markets, Taiwan and Hong Kong, are the subject of the instant dispute.

**B. Transitioning the Taiwan and Hong Kong Markets**

Microsoft and Yahoo originally agreed for the migration of the Taiwan and Hong Kong markets to be completed by 2011. (See Fumerton Decl., Ex. B § 8.1; Frantz Decl., Ex. 2 at 153:9-22 (Test. of Yahoo Senior Director for Search Alliance Ramesh Ramalingam).) However, technical problems leading up to the transition led to several delays by mutual agreement. (See Frantz Decl., Ex. 1 at 40:20-41:10 (Test. of Robert Wyler).) In February 2013, Microsoft and Yahoo agreed to a final plan to transition the Taiwan and Hong Kong markets by the end of October 2013. (See Frantz Decl, Ex. 7.)

By mid-September 2013, the Ramp phase of the transition was ready to begin.  (See Frantz Decl., Ex. 11.)  Leaders of the transition efforts from both parties agreed that the quality criteria had been met, indicating that the transition was ready to proceed.  (See id.; see also Frantz Decl., Ex. 2 at 179:25-180:2 (Test. of Ramalingam) (Ramesh Ramalingam, who was leading the transition effort for Yahoo, wanted to move forward with the Ramp phase).)  However, on Friday, September 20, 2013, Yahoo informed Microsoft that it was not proceeding with the transition at that time, and noted that it "hope[d] to proceed with the migration of [Taiwan] and [Hong Kong] in early 2014."  (See Frantz Decl., Ex. 12.)  Yahoo gave as its reason "concerns about Microsoft's level of commitment to the Bing Ads platform" in light of Microsoft CEO Steve Ballmer's announcement that he planned to step down sometime before August 2014.[2]  (See Frantz Decl., Ex. 13 at 1.)  That same day, Microsoft informed Yahoo that it considered "Yahoo's conduct concerning search migrations [] a breach of the parties' Search and Advertising Services and Sales Agreement."  (See Frantz Decl., Ex. 18 at 3.)

**C. The Emergency Arbitration**

On September 26, 2013, Microsoft initiated "an emergency arbitration."  (See Opp'n Mem. at 11.)  It did so pursuant to § 17.4.2 and § 17.5 of the Agreement,[3] which collectively

---

[2] Yahoo later made clear that it intended to "pause" migration efforts in Taiwan and Hong Kong until after Yahoo CEO Marissa Mayer was "able to discuss the partnership with Mr. Ballmer's successor." (Frantz Decl., Ex. 13 at 13; see also id., Ex. 2 at 283:20-284:5 (Test. of Laurie Mann, Yahoo Senior Vice President of Search Products) ("If we decide a new CEO has the same commitment that Steve Ballmer had, then we will go forward with the transition."); id., Ex. 2 at 97:24-98:25 (Test. of Marissa Mayer, CEO of Yahoo) ("This is about [the new Microsoft CEO]'s strategy and commitment to moving forward.").) According to Microsoft, "it is unknown when [the new] CEO will be named, but it may be as late as August 2014, the date by which Mr. Ballmer has announced he will retire." (Opp'n Mem. at 23.)

[3] In relevant part, § 17.5 provides specifically:

> Except with respect to claims for interim, injunctive or emergency relief, where an Emergency Arbitrator will be appointed pursuant to Rule O-1 of the AAA Emergency Measures of Protection, the arbitration will be heard and determined before arbitrators selected in accordance with the remainder of this Section 17.5. The parties agree that the arbitrator is authorized to compel and

4

provide for emergency arbitration in some circumstances.  (See id.)  The AAA-appointed Emergency Arbitrator directed the proceeding, which involved extensive briefing and testimony.  Both Microsoft and Yahoo filed lengthy briefs, and each submitted affidavits from witnesses.  (See Arbitrator's Award at 8-14.)  Two days of hearings, on October 7-8, 2013, included the presentation and cross-examination of ten witnesses, including the CEOs of both Microsoft and Yahoo.  (See Frantz Decl., Exs. 1-2.)  At the close of the proceedings, both parties submitted proposed findings of fact and conclusions of law.  (See Opp'n Mem. at 11.)

On October 14, 2013, the Arbitrator issued a decision finding "that by imposing its pause and refusing to proceed with the scheduled Taiwan and Hong Kong migrations, Yahoo is in breach of the Agreement."[4]  (See Arbitrator's Award at 7.)  The Arbitrator also concluded, *inter alia*, that "based on [his] evaluation of the testimony and affidavits submitted," it is "critical that the Ramp phase follow the Demand phase that has been successfully completed because advertiser orders and preferences change over time."  (Id. at 8.)  Therefore, he found that the "urgency of the transition establishes the emergency required by the Emergency Rules."  (Id. at

---

award interim injunctive or emergency relief. The parties further agree that they may seek and the arbitrator(s) may compel and award specific performance (in addition to any other remedies and including in connection with claims for interim, injunctive or emergency relief), even if such relief could not be awarded or would otherwise not be available if the claim were to be adjudicated in a judicial proceeding. Accordingly, in any action for specific performance, the parties waive the defense of adequacy of a remedy at law. Any non-monetary relief will be tailored to preserve, to the greatest extent possible, the scope of the Services provided under this Agreement and the parties' intent with respect to such Services.

Fumerton Decl., Ex. B § 17.5.

[4] The Emergency Arbitrator adopted Yahoo's terminology for its decision not to proceed with the Hong Kong and Taiwan transition plan, calling it a "pause," although he noted that "Ms. Mayer [] admitted that the pause was not of brief duration…[and] there is no assurance that Ms. Mayer will be satisfied with what the successor CEO will say, in which case it appears that the Yahoo pause could be of indefinite and possibly permanent duration." (Arbitrator's Award at 5.)

14.)  He further concluded that the testimony and affidavits demonstrated that the Yahoo's breach of the Agreement "establishe[d] irreparable harm to Microsoft."  (Id.)

The Arbitrator rejected Microsoft's request for specific performance and issued an injunction that "restores the parties to the activities they were ready to proceed with before the pause."  (Id. at 15.)  The Arbitrator ordered that Yahoo is "restrained and enjoined from continuing any pause in transitioning" and is "commanded to use all efforts" to complete the Taiwan transition by October 28, 2013 and the Hong Kong transition by November 11, 2013.  (Id. at 15-16.)  Finally, although the Arbitrator awarded an injunction rather than specific performance, he noted that "[a]n injunction can achieve the same goal as specific performance, namely to get the Taiwan and Hong Kong migrations completed."  (Id. at 14.)

## II.   VACATUR OF THE ARBITRATION AWARD

### A.  Legal Standard

The Federal Arbitration Act, 9 U.S.C § 1 *et seq.* ("FAA") established a strong federal policy in favor of arbitration, requiring courts to "rigorously enforce agreements to arbitrate." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).  However, the FAA does provide for instances when an arbitration award may be vacated by the district court.  Section 10(a)(4) of the Federal Arbitration Act authorizes a district court to vacate an arbitral award "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  If an arbitrator "goes beyond that self-limiting agreement between consenting parties, [he] acts inherently without power, and an award ordered under such circumstances must be vacated." Porzig v. Dresdner, Kleinwort, Benson, N.A., 497 F.3d 133, 140 (2d Cir. 2007).

However, in order to vacate an award on this ground, "it is not enough for petitioners to show that the panel committed an error—or even a serious error."  Stolt-Nielsen S.S. v.

AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) (internal citations omitted).  Rather, it is only when an arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable."  Id. (internal citations omitted).  If the parties agreed to submit their dispute to arbitration, as the parties did here, a court will "uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached."  ReliaStar Life Ins. Co. v. EMC Nat. Life Co., 564 F.3d 81, 86 (2d Cir. 2009).  Finally, "an arbitration award may not be vacated because of disagreement with the arbitrator's evaluation of the evidence."  Data & Development, Inc. v. Infokall, Inc., 513 F. App'x 117, 118 (2d Cir. 2013).

Courts in the Second Circuit have also vacated arbitration awards that are in "manifest disregard of the law."  See Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998). Awards are vacated on these grounds "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  T.Co Metals, L.L.C. v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010).  Proving that an arbitrator acted in manifest disregard of the law requires a two-part showing.  First, the court must consider "whether the governing law alleged to have been ignored by the arbitrator was well defined, explicit, and clearly applicable."  Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002).  Second, the court must consider whether the arbitrator "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." Id. (internal citations omitted).

### B. Discussion

Yahoo argues that the Arbitrator exceeded his authority and manifestly disregarded the law, and therefore this Court should vacate the award under 9 U.S.C. § 10(a)(4).  The Second

Circuit has "consistently accorded the narrowest of readings to [§ 10(a)(4)] in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." ReliaStar, 564 F.3d at 85. Given the narrow interpretation of § 10(a)(4) by the Second Circuit and for the reasons discussed below, Yahoo's petition to vacate is denied.

### *1. The Arbitrator Did Not Exceed his Authority by Issuing a Final Award*

Yahoo first alleges that the Award must be vacated because the Emergency Arbitrator awarded Microsoft "final permanent relief" even though the parties' Agreement—and the AAA Optional Rules for Emergency Measures of Protection (the "Emergency Measures") expressly incorporated therein—only permit an Emergency Arbitrator to award "interim relief." (Pet'r's Mem. at 2.) Yahoo characterizes "interim relief" as "relief necessary to preserve the status quo until the matter can be fully and fairly decided by a three-Arbitrator panel of industry experts following discovery." (Id.) Yahoo alleges that the Emergency Arbitrator's award was final because migration in the Taiwan and Hong Kong markets, which is required by the injunction, is irreversible. (See Fumerton Decl., Ex. C at 84:18-24 (Test. of Yahoo CEO, Marissa Mayer); see also id., Ex. F at 144:16-18 (Test. of Microsoft Witness, Dr. Qu Lu) ("[O]nce we transitioned, there's no going back . . . It's a permanent situation.").)

Yahoo's argument fails, however, because there is a more than colorable basis for finding that the Arbitrator was authorized to grant the relief that was awarded. The 2009 Agreement between Yahoo and Microsoft adopts the Emergency Measures "with respect to any claim for *interim, injunctive, or other emergency relief*."[5] (See Fumerton Decl., Ex. B § 17.5 (emphasis

---

[5] Section 17.5 of the 2009 Agreement refers to "interim, injunctive or other emergency relief" in Lines 6-7 and again refers to "interim, injunctive or emergency relief" in Lines 9-10 and in Line 15—the comma that follows "interim" in these clauses indicate that an Arbitrator is authorized to award not only interim relief, but also injunctive relief or emergency relief. (See Fumerton Decl., Ex. B § 17.5.) However, in Line 13, the same phrase appears without the

added).)  Yahoo argues that this section indicates that an Emergency Arbitrator may only enter "an interim award" for emergency relief "prior to the constitution of a panel."  (See Fumerton Decl., Ex. K, Emergency Measures Rules O-1, O-4.)  But the Agreement itself, in the same provision that adopts the Emergency Measures, states that "[t]he parties agree that the arbitrator is authorized to compel and award interim injunctive or emergency relief . . . and the arbitrator[s] may compel and award specific performance (in addition to any other remedies and including in connection with claims for interim, injunctive or emergency relief)".  (Id., Ex. B § 17.5.)  The Agreement further states, in the same provision providing for emergency arbitration, that "[a]ny non-monetary relief will be tailored to preserve, to the greatest extent possible, the scope of Services provided under this Agreement and the parties' intent with respect to such Services."  (Id.)

      The language in the Agreement suggests that Yahoo and Microsoft empowered an Emergency Arbitrator to grant non-monetary relief necessary to restore the status quo.  (See Opp'n Mem. at 17.)  During arbitration, the Emergency Arbitrator addressed Yahoo's argument that the preliminary injunction Microsoft was seeking was inappropriate because of its finality, but nevertheless found that injunctive relief was needed to restore the status quo, stating that "the injunction imposed hereby merely restores the parties to the activities they were ready to proceed with before [Yahoo's unilateral pause]."  (Arbitrator's Award at 15.)  Because restoration of the status quo may appropriately require one party to perform contractual obligations, the Arbitrator had a colorable basis for concluding that an injunction requiring Yahoo to continue to perform

---

comma following "interim relief," where the agreement reads: "[t]he parties agree that the arbitrator is authorized to compel and award interim injunctive or emergency relief . . ." (Id.)  Even though the clause in Line 13 plausibly indicates that all injunctive relief must be interim, a more convincing interpretation of this clause, when read in conjunction with other clauses in Section 17.5, is that it authorizes the Emergency Arbitrator to grant injunctive or emergency relief, in addition to interim relief.

9

was necessary.  See Tom Doherty Assocs., v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) ("Confusion in breach of contract cases as to whether an injunction is mandatory or prohibitory may stem from the meaning of 'status quo.'  A plaintiff's view of the status quo is the situation that would prevail if its version of the contract were performed.").

The Second Circuit has held that "[a]s long as the Arbitrator is even arguably construing or applying the contract and acting within the scope of this authority," the district court must uphold the Arbitrator's award.  ReliaStar, 564 F.3d at 86 (internal quotation and citation omitted.)  Here, the record makes clear that the Emergency Arbitrator reached his decision out of effort to construe and apply the 2009 Agreement.  Accordingly, the Arbitrator acted within his authority in granting an injunction as to the migration to Bing, even though the equitable relief that was granted is, in essence, final.

### *2. The Arbitrator Did Not Exceed his Authority by Finding an Emergency and Irreparable Harm.*

Yahoo also argues that there were no facts on the record demonstrating an emergency, and therefore the Emergency Arbitrator did not have jurisdiction to award any relief.  (See Fumerton Decl., Ex. K, Emergency Measures Rule O-1.)  Yahoo argues that the parties' regular course of conduct—which Yahoo alleges has included numerous delays as operational or business issues arose—makes clear that the latest delay was no emergency.  (See Pet'r's Mem. at 17.)  Further, under the Emergency Measures, the Emergency Arbitrator is required to find "that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief" before granting relief. (Fumerton Decl., Ex. K, Emergency Measures Rule O-4.)  Yahoo argues that this standard was not met because mere fear or speculation cannot constitute irreparable harm, see JSG Trading Corp. V. Tray-Wrap, Inc.,

917 F.2d 75, 80 (2d Cir. 1990), and Yahoo alleges that during the hearing, Microsoft did not offer any non-speculative evidence. (Pet'r's Mem. at 17, 20.)

These arguments lack merit, however, because the Arbitrator made factual findings of both emergency (see Arbitrator's Award at 8-14) and immediate irreparable harm (id. at 2) based on the evidence that had been presented in arbitration. (Id. at 8-14.) "[A]n arbitration award may not be vacated because of disagreement with the Arbitrator's evaluation of the evidence." Data & Development, 513 F. App'x at 118. Moreover, the record shows that the Arbitrator reached his factual determinations based on significant evidence showing that it was critical that the Ramp phase immediately follow the Demand phase, including affidavits, dozens of exhibits, and the testimony of ten witnesses. (See Arbitrator's Award at 8-14.) Accordingly, deference to the Arbitrator's determinations is appropriate.

### 3. The Arbitrator Did Not Manifestly Disregard the Law

Yahoo finally alleges that the Emergency Arbitrator disregarded well-settled law when he ordered an injunction without having made an appropriate finding that Microsoft is entitled to injunctive relief. In the Second Circuit, a party seeking a preliminary injunction "ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008). Yahoo argues that the Arbitrator's failure to make these findings constitutes a manifest disregard of the law, and the Award should be vacated on these grounds. See Hardy v. Walsh Manning Secs., L.L.C., 341 F.3d 126, 131 (2d Cir. 2003).

11

However, this argument also fails because Yahoo cannot point to a clear rule of law that the Emergency Arbitrator ignored or refused to apply.  See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) (party seeking vacatur based on an arbitrator's manifest disregard of the law "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.").  Here, the record shows that the Arbitrator considered and applied applicable law in granting the injunction: that is, the Arbitrator (1) found that there was a likelihood of irreparable harm, as to Microsoft (see Arbitrator's Award at 9-15); (2) found the balance of hardships was in favor of Microsoft (see id.); and (3) considered the likelihood of Microsoft's success on the merits (id. at 6-7 (finding Yahoo's pause is a breach of the Agreement)).  Because Yahoo has not established a clear rule of law that the Arbitrator was aware of and refused to apply, there is no showing that the Arbitrator manifestly disregarded the law.  The evidentiary dispute that Yahoo describes cannot be the basis for vacating an arbitration award.  See Data & Development, 513 F. App'x at 118.

### III. CONFIRMATION OF THE ARBITRATION AWARD

Microsoft cross-petitions this Court to confirm the arbitration award.  The FAA, in 9 U.S.C. § 9, provides that a court "must grant such an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  "The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  Florasynth, Inc. v. Pickholz, 750 F.2d 171, 171 (2d Cir. 1984).  The Court finds here that there is no basis to vacate the award, and the parties have not moved the Court to modify or correct it.  Therefore, a plain reading of the FAA suggests that the Court should confirm the award.

Nevertheless, Yahoo objects that confirmation of the Award is inappropriate here because "[w]here…arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable." (Pet'r's Letter at 2 (citing Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980)).) Because this Court finds, as discussed at length above, that the equitable relief awarded is final, and that the Emergency Arbitrator neither exceeded his authority nor manifestly disregarded the law in awarding such relief, Yahoo's argument is inapposite.

Further, if "an arbitral award of equitable relief based upon a finding of irreparable harm is to have any meaning at all, the parties must be capable of enforcing or vacating it at the time it is made." Southern Seas Nav. Ltd. v. Petroleos Mexicanos, 606 F. Supp. 692, 694 (S.D.N.Y. 1985) (Weinfeld, J.); see also Sperry Int'l Trade v. Gov't of Israel, 532 F. Supp. 901, 909 (S.D.N.Y. 1982) aff'd 689 F.2d 301 (2d Cir. 1982) (confirming an arbitrator's order to place a disputed $15 million letter of credit in escrow pending a decision on the merits, finding that the award would be rendered a meaningless exercise of the arbitrator's power if unenforced). Here, given the time-sensitive nature of the Hong Kong and Taiwan transition, the parties have a clear interest in enforcing the equitable award made by the Arbitrator as soon as possible. At oral argument, Microsoft additionally voiced concerns that Yahoo would not comply with the arbitration award without confirmation by this Court. (Tr. of Hr'g at 46, Oct. 18, 2013 ("They have told us they are not going to comply, and I can represent to your Honor, they are not complying.").) Because the Court finds no basis to vacate the Award and because the Court is mindful of the time-sensitive nature of Yahoo's compliance with the injunction, Microsoft's cross-petition to confirm the arbitration award is granted.

## IV. CONCLUSION

Yahoo did not meet the heavy burden required to show that the Emergency Arbitrator exceeded his authority under 10 U.S.C. § 10(a)(4).  See ReliaStar, 564 F.3d at 86 ("If the parties agreed to submit an issue for arbitration, we will uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached.")  Yahoo similarly did not present sufficient evidence to show that that this Award was one of the "exceedingly rare instances" where an arbitrator manifestly disregards the law.  See T.Co Metals, 592 F.3d at 340.  Therefore, upon a review of the Award and upon due consideration of the arguments made by both parties, Yahoo's motion to vacate must be denied.  Finally, given that the petition to vacate the Award is without merit and given the interest in enforcement of the equitable award made by the Arbitrator, the arbitration award should be confirmed.  See 9 U.S.C. § 9 (a court "must grant such an order [confirming an arbitration award] unless the award is vacated, modified, or corrected").

Therefore, Yahoo's motion to vacate the arbitration award is DENIED. Microsoft's cross-petition to confirm the arbitration award is GRANTED.

SO ORDERED.

Dated:  New York, New York
        October 21, 2013

_____/s/_____

Robert P. Patterson, Jr.
United States District Judge, Part I

*Counsel for Petitioner and Cross-Respondent, Yahoo! Inc.:*

**Alexander C Drylewski**
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)

Four Times Square
42nd floor
New York, NY 10036
(212) 735-3000
Fax: (917)-777-2129
Email: alexander.drylewski@skadden.com

**Patrick George Rideout**
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)
Four Times Square
42nd floor
New York, NY 10036
(212)-735-2702
Fax: (917)-777-3702
Email: patrick.rideout@skadden.com

**Robert Alexander Fumerton**
Skadden, Arps, Slate,Meagher & Flom LLP(IIA)
Four Times Sq.,
New York, NY 10036
(212)-735-3902
Fax: (212)-777-3902
Email: robert.fumerton@skadden.com

*Counsel for Respondent and Cross-Petitioner, Microsoft Corp.:*

**Richard Scott Goldstein**
Orrick, Herrington & Sutcliffe LLP (NYC)
51 West 52nd Street
New York, NY 10019
212-506-5000
Fax: 212-506-5151
Email: rgoldstein@orrick.com